UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TIBEBE F. SAMUEL,
      Plaintiff

v.

WELLS FARGO & COMPANY, *et al.*,
      Defendants

Civil Action No. 17-2539 (CKK)

**MEMORANDUM OPINION**
(April 27, 2018)

At the center of this lawsuit is the alleged decision of Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively, "Wells Fargo") to deny a Home Affordable Modification Program ("HAMP") application filed by Genet Damtie in 2010. Given its subject matter, one might reasonably expect that Ms. Damtie would be a party to this case. She is not. Instead, this case has been brought by Tibebe F. Samuel, an individual who allegedly represented Ms. Damtie in her dealings with Wells Fargo. Ms. Damtie's HAMP application was never granted. She ultimately fired Plaintiff in early 2017. Her home was foreclosed later that year. Plaintiff filed suit shortly thereafter.

Plaintiff, who does not purport to represent Ms. Damtie in this lawsuit, contends that Wells Fargo treated him unfairly during Ms. Damtie's HAMP application process. Plaintiff's currently-operative Amended Complaint is filled with generalized allegations of broken promises, deception and defamation. It is not a model of clarity or specificity. Defendants have filed a [12] Motion to Dismiss the Amended Complaint. Upon consideration of the pleadings,[1]

---

[1] The Court's consideration has focused on the following documents:
- Defs.' Mem. in Support of Mot. to Dismiss Am. Compl., ECF No. 12-2 ("Defs.' Mot.");

the relevant legal authorities, and the record as it currently stands, the Court GRANTS-IN-PART and DENIES-IN-PART that motion. All of the claims that the Court can discern in Plaintiff's Amended Complaint are dismissed. For many of those claims, the statute of limitations has run. For others, Plaintiff has failed to plead essential elements. And for still others, there is simply no private cause of action available to Plaintiff.

However, for the first time in his Opposition to Defendants' Motion to Dismiss, Plaintiff has raised defamation and interference with business relationship claims based on a statement that Wells Fargo allegedly made to Ms. Damtie about Plaintiff in March 2017. Because Plaintiff proceeds *pro se*, the Court has considered these claims despite the fact that they were absent from his Amended Complaint. Unlike Plaintiff's other defamation and interference claims, these claims do not appear to be time-barred or otherwise subject to dismissal on the pleadings on the current record. Plaintiff's lawsuit will be allowed to continue only so that he can assert claims based on the March 2017 statement. However, the Court will order Plaintiff to file a Second Amended Complaint that specifically asserts these claims so that there is an operative complaint in this case that sets forth the claims that are actually at issue going forward. This new pleading shall also omit the claims that the Court dismisses with prejudice, as discussed in more detail below.

## I. BACKGROUND

For the purposes of the motion before the Court, the Court accepts as true the well-pleaded allegations in Plaintiff's Amended Complaint. The Court does "not accept as true,

---

- Pl.'s Opp'n to Defs.' Mot. to Dismiss, ECF No. 14 ("Pl.'s Opp'n); and
- Defs.' Reply in Support of Mot. to Dismiss Am. Compl., ECF No. 15 ("Defs.' Reply").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).

In their reply brief, Defendants argue that the Court may not consider exhibits and factual assertions raised for the first time in Plaintiff's Opposition to Defendants' Motion to Dismiss because "it is well-settled that a plaintiff cannot seek to amend his pleadings in an opposition to a motion to dismiss." Defs.' Reply at 3. Although this principle is indeed well-settled in cases where the plaintiff is represented by counsel, it does not apply in the same fashion in cases where the plaintiff proceeds *pro se*. Because Plaintiff proceeds in this matter *pro se*, when determining whether Plaintiff can state a plausible claim for relief the Court must consider his complaint in light of all of his filings, including those submitted in response to Defendants' Motion to Dismiss. *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) ("a district court errs in failing to consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss") (quoting *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)); *Fillmore v. AT & T Mobility Servs. LLC*, 140 F. Supp. 3d 1, 2 (D.D.C. 2015) ("the Court, as it must in a case brought by a *pro se* plaintiff, considers the facts as alleged in both the Complaint and Plaintiff's Opposition to Defendant's Motion to Dismiss."). Accordingly, the Court has considered Plaintiff's claims in light of all of his filings, including his Opposition to Defendants' Motion to Dismiss and the attachments thereto.

Plaintiff alleges that Wells Fargo serviced a mortgage on a Washington, D.C. property for which non-party Ms. Genet Damtie was the borrower. Am. Compl., ECF No. 9, ¶¶ 2, 30. Ms. Damtie allegedly retained Plaintiff in March 2010 "to handle and complete a Home Loan Modification Program (HAMP) Application" for her. *Id.* ¶¶ 2-3, 30. HAMP provides incentives for mortgage servicers to modify eligible first lien mortgages so that the payments of

3

homeowners who are in default or risk of default can be reduced to affordable levels. *Id.* ¶¶ 18-19. Plaintiff is a self-described "loan modification consultant" who helps home owners navigate the HAMP application process. *Id.* ¶ 27. As is required by law, Plaintiff was not to be paid by Ms. Damtie unless and until her HAMP application process was completed. *Id.* ¶¶ 29, 31.[2]

An "Authorization Letter" was sent to Wells Fargo notifying it of Plaintiff's retention by Ms. Damtie, and Wells Fargo allegedly responded to the letter indicating that it agreed to work with Plaintiff as Ms. Damtie's agent. *Id.* ¶¶ 3, 32.[3] Wells Fargo allegedly indicated that it would make a decision on Ms. Damtie's HAMP application within 45-60 days (assuming that all required information had been provided). *Id.* ¶¶ 4, 32. However, according to Plaintiff, the process ended up taking more than seven years. *Id.* During this period Plaintiff allegedly completed numerous tasks on behalf of Ms. Damtie (*e.g.*, "faxing and mailing documents" and "letter writing"). *Id.* ¶ 5. Plaintiff continued to work as Ms. Damtie's agent until April 2017 when, frustrated with the delay, Ms. Damtie terminated his representation and hired a new representative. *Id.* ¶ 4.[4] In June of that year her home was foreclosed. *Id.*

Plaintiff alleges that Wells Fargo lied when it indicated in 2010 that Ms. Damtie's application would be processed in 45-60 days. *Id.* ¶ 6. In fact, according to Plaintiff, Wells Fargo "never had the intention of modifying the loan at all." *Id.* ¶¶ 6, 46-47. Instead, Wells

---

[2] Plaintiff makes clear in his Amended Complaint that he is bringing this case "on his own behalf." *Id.* ¶ 9.

[3] In his Opposition to Defendants' Motion to Dismiss, Plaintiff indicates that multiple such letters were sent and acknowledged by Wells Fargo. *See* Pl.'s Opp'n at 2, Exs. A & B.

[4] Plaintiff has attached to his Opposition to Defendants' Motion to Dismiss two letters that Ms. Damtie allegedly sent to him through which she terminated his representation due to her frustration with Plaintiff's failure to secure a loan modification for her from Wells Fargo. *See* Pl.'s Opp'n, Exs. E & F.

Fargo's intention was allegedly "to accumulate interest in the mortgage," "prolong the HAMP process" and eventually foreclose on the home when profitable to Wells Fargo. *Id.* ¶ 6.

In a section of his Amended Complaint entitled "Defamation of Character and Interference in Plaintiff's Business," Plaintiff alleges that Wells Fargo made certain false statements about Plaintiff to Ms. Damtie and others. *Id.* ¶¶ 41-45. In his Amended Complaint, Plaintiff alleges two specific instances when such false statements were made. First, Plaintiff alleges that "[i]n the Superior Court of the District of Columbia in July 2016 during a hearing, the defendant's representative made a false statement regarding the Plaintiff." *Id.* ¶ 42. Second, Plaintiff alleges that "[i]n August 2016, a complaint was lodged by the borrower against the Defendant to Consumer Financial Protection Bureau (CFPB)" and "although the Defendant and the Plaintiff discussed . . . the complaint," Defendants "provided false information to the CFPB stating that the Defendant was 'unable to reach the Plaintiff' in order to address the issues in the complaint." *Id.* ¶ 43. Finally, although not alleged in his Amended Complaint, Plaintiff has raised a third allegedly defamatory statement in his Opposition to Defendants' Motion to Dismiss. According to a letter allegedly sent by Ms. Damtie to Plaintiff, a Wells Fargo customer service representative told Ms. Damtie on March 28, 2017 that her HAMP application had not been granted in part because Wells Fargo had been unable to get in touch with Plaintiff. *See* Pl.'s Opp'n, Ex. E.

Defendants have moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). That motion has been fully briefed and is now ripe for resolution.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A]

complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

### A. Conclusory Allegations of Wrongdoing

At the outset, the Court notes that Plaintiff's Amended Complaint is littered with generalized, conclusory allegations of wrongdoing that are insufficient to state a claim against Defendants. *See, e.g.*, Am. Compl. ¶ 1 (alleging that Defendants engaged in "misconduct, deceptive business practices, interference in business relations, and defamation of character"); *id.* ¶ 4 (alleging that the HAMP application process was delayed due to "deceptive practices and dishonesty by the defendant"); *id.* ¶ 6 (alleging that Defendants "lied," "made deceptive and dishonest statements," and provided information that was "harmful"); *id.* ¶ 35 ("Defendants have engaged in a pattern of unfair and deceptive practices," "provid[ed] false information" and "fail[ed] to deal with the Plaintiff in good faith and engag[ed] in deceptive practices"); *id.* ¶ 39 ("Defendant violated federal laws, violated the District of Columbia laws, program requirements and contractual requirements governing loss mitigation"); *id.* ¶ 40 (alleging that Defendants have "engaged in a pattern of unfair and deceptive practices"); *id.* ¶ 41 (alleging that Defendants failed "to respond to borrower and Plaintiff's inquiries" and "provid[ed] false or misleading information" on certain issues); *id.* ¶ 44 (alleging "improper, unlawful, deceptive, and unethical

conduct of the Defendant"); *id.* ¶ 50 (alleging that "Defendant abused its authority and abused the HAMP process; the Defendant violated duties owed to the Plaintiff; the Defendant violated Federal and the law of the District of Columbia; and the defendant's unlawful, deceptive, unethical, and fraudulent conduct has resulted in injury to the Plaintiff in this case").[5]

These conclusory, "naked assertions" of wrongdoing do not aid Plaintiff's lawsuit in surviving a motion to dismiss. *See Iqbal*, 556 U.S. at 678. Cursory, unexplained allegations of misconduct do not satisfy the pleading standards of Federal Rule 8 and, to the extent Plaintiff is alleging fraud, they certainly do not satisfy the heightened pleading standards of Federal Rule 9(b). Below, the Court addresses whether the *specific* allegations in this case are sufficient to state plausible claims for relief pursuant to the causes of action Plaintiff appears to be asserting.

**B. Contract Claims**

To the extent Plaintiff intends to assert contract claims, those claims are dismissed with prejudice. The Court can only discern one *potential* agreement from Plaintiff's pleadings that could, theoretically, support a contract claim between Plaintiff and Defendants: Defendants' alleged "promise" in 2010 to Plaintiff that they would process Ms. Damtie's HAMP application within 45-60 days (assuming all required information had been provided).[6] Assuming for the purposes of Defendants' Motion to Dismiss that Plaintiff could have standing to enforce this promise, and that this promise could serve as the basis for an actionable contract claim, Plaintiff's claim still must be dismissed with prejudice because the statute of limitations has run.

---

[5] This sort of allegation makes up a large portion of Plaintiff's Opposition to Defendants' Motion to Dismiss as well. *See, e.g.*, Pl.'s Opp'n at 3-5.

[6] Plaintiff makes other extremely vague, broad assertions of "promises," but none are pled with sufficient particularity to state a claim. Courts regularly dismiss vague or imprecise contract claims. *See Burnett v. Am. Fed'n of Gov't Employees*, 102 F. Supp. 3d 183, 193 (D.D.C. 2015) (citing cases).

"The statute of limitations in the District of Columbia for bringing a breach of contract claim is three years," and it begins to run at the time of the alleged breach. *LoPiccolo v. Am. Univ.*, 840 F. Supp. 2d 71, 77-78 (D.D.C. 2012) (citing D.C. Code § 12-301(7)). A breach of contract claim premised on Defendants' failure to comply with the 45-60 day timeline promise would have accrued when Defendants (allegedly) failed to make a decision on Ms. Damtie's HAMP application within that timeframe. This was sometime in 2010, far more than three years before this case was filed in November 2017.[7]

In addition, it appears that Plaintiff intends to assert a claim for breach of contract based, at least in part, on the implied duty of good faith and fair dealing. *See* Am. Compl. ¶¶ 46-51 (section of allegations under heading "Breach of Implied Covenant of Good Faith and Fair Dealing Asserted by Plaintiff"). This claim is fundamentally flawed. It is true that in the District of Columbia, "'all contracts contain an implied duty of good faith and fair dealing.'" *Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006) (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000)). But, besides the alleged promise to process Ms. Damtie's application in 45-60 days (which, as described above, is not actionable), Plaintiff does not identify a contract between *himself* and Defendants to which such an implied duty might attach. The actual contractual relationships relating to the mortgage in this case involved *Ms. Damtie*, not Plaintiff.[8] Without a

---

[7] Plaintiff states in his Opposition to Defendants' Motion to Dismiss that his contract claims are timely because he submitted additional HAMP applications in 2016, *see* Pl.'s Opp'n at 9, but this argument misses the mark. Plaintiff may have submitted additional HAMP materials in 2016, but he only alleges that Defendants promised him to process Ms. Damtie's application in 45-60 days in 2010.

[8] Although somewhat difficult to square with the remainder of Plaintiff's allegations, Plaintiff indicates in his Opposition to Defendants' Motion to Dismiss that he is not attempting through this lawsuit to challenge Defendants' decision to deny Ms. Damtie's HAMP application. Pl.'s Opp'n at 12. Had Plaintiff asserted such a claim, it would be subject to dismissal because Plaintiff does not have standing to sue Defendants for their alleged failure to grant Ms. Damtie a HAMP loan modification.

contractual relationship, there can be no claim for breach of the implied duty of good faith and fair dealing. *See Koker v. Aurora Loan Servicing, LLC*, 915 F. Supp. 2d 51, 65 (D.D.C. 2013) ("the implied duty of good faith and fair dealing only applies in the context of a party's contractual performance"). And, even if Plaintiff were a party to the mortgage contracts at issue in this case, considering but declining to grant a loan modification to a defaulting borrower does not itself violate the implied duty of good faith and fair dealing. *See In re Coleman*, No. 06-00254, 2009 WL 9061560, at *7 (Bankr. D.D.C. May 11, 2009) (with respect to good faith and fair dealing claim, holding that defendant home loan company "was not obligated to modify [plaintiff's] Mortgage or otherwise engage in workout agreements that would give [plaintiff] the opportunity to become current on his payments."). For these reasons, Plaintiff cannot state a claim against Defendants for breach of the implied duty of good faith and fair dealing. All of Plaintiff's contract claims are therefore dismissed with prejudice.[9]

## C. Fraud Claims

Next, although it is not clear whether Plaintiff actually intended to assert a claim for fraud, the Court notes that he has not adequately pled such a claim. At the threshold, allegations of fraud must be pled with particularity. *See* Fed. R. Civ. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud"). Filled as it is with generalizations and conclusory allegations of wrongdoing, Plaintiff's Amended Complaint does not satisfy this heightened pleading standard.

---

[9] In his Opposition to Defendants' Motion to Dismiss, Plaintiff states (in passing) that Defendants owed him a fiduciary duty. *See* Pl.'s Opp'n at 6. Plaintiff—who appears to have had an arm's length business relationship with the Defendants—has not alleged any facts that would support the claim that such a duty was owed. *See Haynes v. Navy Fed. Credit Union*, 52 F. Supp. 3d 1, 9 (D.D.C. 2014) (holding that an "arm's length business relationship" with a home mortgage lender did not give rise to a fiduciary duty).

Plaintiff's fraud claim is fundamentally flawed for additional reasons. Assuming that claim was based on the allegedly false statement that Defendants would process Ms. Damtie's HAMP application within 45-60 days, the claim fails because it is time-barred. As with Plaintiff's contract claim, his fraud claim would be subject to a three year statute of limitations. *See Hawkins v. Greenfield*, 797 F. Supp. 30, 33 (D.D.C. 1992). Plaintiff did not file suit within three years of the accrual of a claim based on this statement.

Plaintiff cannot state a fraud claim based on the other allegedly false statements mentioned in his Amended Complaint (or opposition brief) because he does not allege that he relied on those statements. "Under D.C. law, '[t]he essential elements of common law fraud are: (1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation.'" *Busby v. Capital One, N.A.,* 772 F. Supp. 2d 268, 275 (D.D.C. 2011) (quoting *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.,* 944 A.2d 1055, 1074 n.22 (D.C. 2008)). As noted above, Plaintiff alleges that "[i]n the Superior Court of the District of Columbia in July 2016 during a hearing, the defendant's representative made a false statement regarding the Plaintiff," and "[i]n August 2016, a complaint was lodged by the borrower against the Defendant to the Consumer Financial Protection Bureau (CFPB) . . . [and] the Defendant provided false information to the CFPB stating that the Defendant was 'unable to reach the Plaintiff'" despite the fact that Defendants had allegedly actually spoken with Plaintiff. Am. Compl. ¶¶ 42-43. Additionally, a Wells Fargo representative allegedly made a false statement about Plaintiff to Ms. Damtie in March 2017. *See* Pl.'s Opp'n, Ex. E. Plaintiff does not allege that he relied on any of these statements. Quite the opposite—he seems to have known that these statements were (allegedly)

false from the outset.[10]  Reliance is a fundamental element of any fraud claim.  Because that element is missing here, Plaintiff cannot state a claim for fraud based on these statements.  *See Malek v. Flagstar Bank*, 70 F. Supp. 3d 23, 31 (D.D.C. 2014) (dismissing fraud claim for failure to plead the "critical element" of "reasonable reliance to [plaintiff's] detriment on the defendant's conduct.").

Accordingly, Plaintiff's fraud claims are dismissed.  The dismissal will be without prejudice to the extent that it is based on Plaintiff's failure to plead with particularity.  However, if Plaintiff were to seek to reassert a fraud claim with the sort of particularity required by Federal Rule 9(b), he may do so only if he can allege a claim based on statements that *he* relied upon, that are not barred by the statute of limitations, and that are otherwise cognizable.  None of the statements currently alleged in the Amended Complaint (or opposition brief) satisfy these requirements.

**D.  Statutory Claims**

Plaintiff's Amended Complaint and his Opposition to Defendants' Motion to Dismiss contain references to various statutes.  None of these statutes can support any actionable claim in this case.  To the extent Plaintiff is asserting a claim under the D.C. Consumer Protection Procedures Act ("CPPA"), this claim fails for lack of a consumer-merchant relationship.[11]  The CPPA "prohibits merchants from making material misrepresentations to consumers." *Busby v.*

---

[10] In his Opposition to Defendants' Motion to Dismiss, Plaintiff attempts to demonstrate reliance by arguing that *Ms. Damtie* relied on Wells Fargo's statements.  Pl.'s Opp'n at 11.  This attempt fails, because Ms. Damtie is not the plaintiff in this case.

[11] To the extent Plaintiff intended to pursue a CPPA claim based on the allegedly false statement that Defendants would process Ms. Damtie's HAMP application within 45-60 days, that claim would also fail because it is time-barred.  Courts apply a three year statute of limitations to CPPA claims, *see Bradford v. George Washington Univ.*, 249 F. Supp. 3d 325, 335 (D.D.C. 2017), and, as described above with respect to Plaintiff's contract and fraud claims, Plaintiff's claim was not filed within this period.

*Capital One, N.A.*, 932 F. Supp. 2d 114, 143 (D.D.C. 2013). The law "applies only to consumer-merchant relationships." *Busby*, 772 F. Supp. 2d at 279. It "does not reach transactions intended primarily to promote business or professional interests." *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1043 (D.C. Cir. 2010). Plaintiff has not alleged a consumer-merchant relationship in this case. Plaintiff was not a Wells Fargo customer or borrower. Plaintiff was hired as a professional consultant to help a non-party complete a HAMP application that she submitted to Defendants. Defendants allegedly harmed Plaintiff while Plaintiff was working on that non-party's behalf in his *professional* capacity. Under no plausible set of facts could this be construed as a "consumer-merchant relationship." The relationship between Plaintiff and Defendants, to the extent one existed, was a business or professional relationship. Accordingly, Plaintiff cannot state a claim under the CPPA. *See Busby*, 932 F. Supp. 2d at 143-44 (dismissing CPPA claim for lack of consumer-merchant relationship); *Busby*, 772 F. Supp. 2d at 279-80 (same).

Plaintiff references various other statutes in his Amended Complaint, but they also do not provide him with an actionable claim. To the extent Plaintiff is attempting to assert a claim under the Federal Trade Commission Act ("FTC Act"), that claim fails because the FTC Act does not provide for a private cause of action. "The FTC Act is enforced exclusively by the FTC; there is no private right of action under the statute." *United States v. Philip Morris Inc.*, 263 F. Supp. 2d 72, 78 (D.D.C. 2003) (citing *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 989 (D.C. Cir. 1973)). Similarly, to the extent Plaintiff is asserting a claim under HAMP itself, such a claim would fail because HAMP also does not provide for a private cause of action. *See Leake v. Prensky*, 798 F. Supp. 2d 254, 258 (D.D.C. 2011) (holding that HAMP does not provide a private

cause of action and citing numerous cases).[12]  Accordingly, Plaintiff cannot state a claim under any of the statutes referenced in his pleadings.  Those claims, to the extent Plaintiff intended to assert them, are dismissed with prejudice.

**E. Defamation and Interference with Business Relations Claims**

Finally, Plaintiff alleges that Defendants defamed him (and therefore also interfered with his business relations), by making various false statements about his representation of Ms. Damtie.  The Court will grant-in-part and deny-in-part Defendants' Motion to Dismiss these claims.  The Court will grant Defendants' motion and dismiss these claims to the extent that they are based on the statements identified in paragraphs 41 through 45 of the Amended Complaint, which have already been discussed multiple times in this Memorandum Opinion.  Again, those statements are: "In the Superior Court of the District of Columbia in July 2016 during a hearing, the defendant's representative made a false statement regarding the Plaintiff," and "In August 2016, a complaint was lodged by the borrower against the Defendant to the Consumer Financial Protection Bureau (CFPB) . . . [and] the Defendant provided false information to the CFPB stating that the Defendant was 'unable to reach the Plaintiff'" despite the fact that Defendants had allegedly spoken with Plaintiff.  Am. Compl. ¶¶ 42-43.

The statute of limitations for defamation in the District of Columbia is one year.  *See Jin v. Ministry of State Sec.*, 254 F. Supp. 2d 61, 68 (D.D.C. 2003) (citing D.C. Code § 12-301(4)).  These statements were made no later than August 2016, more than a year before this case was

---

[12] Defendants' Motion to Dismiss contains an argument that Ms.' Damtie's termination of Plaintiff without compensation is not actionable.  Defs.' Mot. at 13-14.   This argument appears to attack a claim Plaintiff is not making.  The Court does not understand Plaintiff to be suing *Defendants* for non-party *Ms. Damtie's* termination of Plaintiff.  Plaintiff appears to concede that the law allowed Ms. Damtie to not pay him.  Am. Compl. ¶ 29.

13

filed in November 2017. Plaintiff's defamation claims based on these statements are accordingly time-barred and therefore dismissed with prejudice.[13] Also time-barred is any interference with business relations claim based on these same allegedly false statements. Because that claim would be based entirely on the same set of underlying facts as Plaintiff's defamation claim, it is also subject to the one-year statute of limitations for defamation claims. *See Browning v. Clinton*, 292 F.3d 235, 244 (D.C. Cir. 2002) (holding that when a tortious interference claim is based solely on allegedly defamatory remarks, it is "intertwined" with plaintiff's defamation claim and therefore subject to the same one-year statute of limitations).

However, in his Opposition to Defendants' Motion to Dismiss, Plaintiff has indicated that Defendants also made false and defamatory statements about him to Ms. Damtie in March 2017. Pl.'s Opp'n at 10. Plaintiff has attached to his Opposition what purports to be a letter from Ms. Damtie to Plaintiff indicating as much. *See id.*, Ex. E. Specifically, Ms. Damtie writes that in her "conversation with [a] Wells Fargo customer service representative on March 28, 2017, I have been informed that they have been trying to get in touch with you on multiple occasions and they are unable to reach you." *Id.* She continues on to explain that Wells Fargo indicated that this inability to reach Plaintiff was part of the reason why Ms. Damtie's HAMP application had not been granted. *Id.* Plaintiff claims that this statement was false and defamed him to his then-client. Because Plaintiff is representing himself *pro se*, the Court considers these allegations despite their absence from Plaintiff's Amended Complaint. *See Brown*, 789 F.3d at 152; *Fillmore*, 140 F. Supp. 3d at 2. This alleged statement was made less than a year before the

---

[13] Even if Plaintiff's claim with respect to the July 2016 statement was not time-barred, that statement—which apparently took place in a hearing before the Superior Court for the District of Columbia—would likely be protected by the judicial proceedings privilege.

filing of Plaintiff's lawsuit. A defamation or interference with business relations claim based on this statement is accordingly not time-barred.

Other than arguing that the Court should ignore the March 2017 statement altogether because it was not alleged in Plaintiff's Amended Complaint—a contention that the Court has already rejected—Defendants argue that a defamation claim based on the March 2017 statement is barred by the "single publication rule." Defendants misinterpret that rule. Under the single publication rule, "publication of defamatory matter 'gives rise to but one cause of action for libel, which accrues at the time of the original publication.'" *Jin*, 254 F. Supp. 2d at 68 (quoting *Ogden v. Ass'n of the United States Army,* 177 F.Supp. 498, 502 (D.D.C. 1959)). "Because the statute of limitations runs from the date of the original publication, any subsequent sale or delivery of a copy of the publication does not create a new cause of action." *Id.* In other words, "for purposes of the statute of limitations in defamation claims, a book, magazine, or newspaper has one publication date, the date on which it is first generally available to the public." *Mullin v. Washington Free Weekly, Inc.*, 785 A.2d 296, 298 n.2 (D.C. 2001).

The single publication rule does not bar a defamation (or interference with business relations) claim based on the alleged statement by Wells Fargo to Ms. Damtie in March 2017. Unlike cases where the single publication rule applies, this is not a case where Defendants originally published a statement and that statement was then distributed by another. Instead, this is a case where (allegedly) multiple representatives of Defendants made similar but separate statements about Plaintiff over a period of time that were each allegedly false and defamatory. Under these circumstances, "[t]t is the general rule that each communication of the same defamatory matter by the same defamer, whether to a new person or to the same person, is a

15

separate and distinct publication, for which a separate cause of action arises." Restatement (Second) of Torts § 577A (1977).[14]

Accordingly, Plaintiff's lawsuit is not dismissed to the narrow extent that it is based on Plaintiff's claim that Defendants made false and defamatory statements about him to Ms. Damtie in March 2017.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS-IN-PART and DENIES-IN-PART Defendants' Motion to Dismiss the Amended Complaint. Plaintiff's contract claims, statutory claims and defamation claims based on statements that occurred in 2016 (and related interference with business relations claims) are dismissed with prejudice. Plaintiff's fraud claim is dismissed without prejudice. Plaintiff shall file a Second Amended Complaint that sets forth Plaintiff's defamation and interference with business relations claim based on the statement allegedly made by Defendants in March of 2017 and omits claims that the Court has dismissed with prejudice. An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

---

[14] In their reply brief, Defendants argue that "neither the Plaintiff's Amended Complaint, nor his Opposition, makes any allegation of wrongdoing by WFC [Wells Fargo & Company]. Instead all of his allegations are directed at WFB [Wells Fargo Bank, N.A.]." Defs.' Reply at 2. Accordingly, Defendants move for the dismissal of all claims against WFC. *Id.* As an initial matter, although Defendants claim that this argument was raised in their Memorandum in Support of the Motion to Dismiss the Amended Complaint, the Court has reviewed that Memorandum and is unable to find mention of this argument. Regardless, the one narrow claim that the Court has allowed to remain in this case is based on a statement allegedly made by "Wells Fargo customer service," and it is not clear at this point whether that statement was made on behalf of WFC or WFB. Both Defendants shall remain in the case.